Jesse E. Davis, Jr., and Sarah F. Davis v. Commissioner.
Davis v. Commissioner
Docket No. 50582.
United States Tax Court
T.C. Memo 1955-230; 1955 Tax Ct. Memo LEXIS 108; 14 T.C.M. (CCH) 929; T.C.M. (RIA) 55230; August 18, 1955
*108 Jesse E. Davis, Jr., 10 Cedarwood Lane, Columbia, S.C., pro se. H. Fenton Day, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax for the calendar year 1949 in the amount of $505.84, and for the calendar year 1950 in the amount of $526.76. The only issue is whether petitioners realized ordinary income or long-term capital gains from the sale of certain real estate during 1949 and 1950. Findings of Fact Some of the facts have been stipulated and are hereby found. Jesse E. Davis, Jr., hereinafter sometimes referred to as petitioner, and his wife, Sarah F. Davis, reside in Columbia, South Carolina. They filed tax returns for 1949 and 1950 with the collector of internal revenue for the district of South Carolina. During 1949 and the early part of 1950, petitioner was a traveling salesman for the Tidewater Supply Company. He was accustomed to being away from Columbia from Monday through Friday while engaged in his sales work. On or about January 1, 1950, petitioner and C. D. Tackston organized the Thackston-Davis Supply Company, Incorporated, trading as wholesalers and distributors *109 of industrial mill-supply hardware and equipment. Petitioner owned 50 per cent of the stock. Offices of this corporation were in Columbia. Petitioner continued to travel as a salesman, now for his own company. On or about January 1, 1946, petitioner and his brother purchased, for $5,000, 19.7 acres of unimproved land on the outskirts of Columbia. The money was originally furnished by the brother but title was taken in the name of petitioner. The land was purchased through a local realtor, Fred G. Aull. In connection with this transaction petitioner later made payments totaling $2,000 to his brother. On October 10, 1950, petitioner transferred to his wife that portion of this land which was still being held in his name. Within 60 days of the purchase, Aull called to request permission to re-offer the property for $8,000. The land was to be offered in the same form as it had been when purchased, in undivided acreage. Petitioner agreed, but Aull found no purchaser. The land was surveyed and divided into 63 lots. A plat was made on June 13, 1946, and recorded on November 4, 1947. The plat was revised on March 10, 1949 and residential and business lots established. A water line, costing *110 $275, was run into the land. The county cut three roads through the land, at no cost to petitioner, but at his request and urging. Petitioner handled all arrangements for surveying, platting, running the water line, and placing pipes under the roads to allow continuation of drainage ditches. Petitioner expended a total of approximately $1,000 on subdividing and improving the land. The land was then listed with another local real estate broker, John C. B. Smith, for sale as one undivided tract. Again, there was no success in securing a buyer. On November 12, 1947, petitioners organized Marwin Builders, Incorporated. Petitioners received all outstanding stock except a single qualifying share issued to a local building contractor. Authorized capital stock was 50 shares, each with a par value of $100. Forty-one shares were issued, 40 of them to petitioners. For this stock, petitioners gave to the new corporation $2,500 in cash and, from the land in question, two lots of a combined value of $1,600. From November 8, 1947, through December 31, 1950, petitioner sold 26 lots. In 1949, he sold 11 lots for $8,800 and in 1950, 13 lots for $9,850. He sold 18 of the 26 lots to Marwin Builders, *111 Incorporated. Marwin Builders, Incorporated, constructed houses on 13 of the lots. It acquired no other land than the lots referred to above. It built only one house other than the 13 referred to above, and that was as a favor to a friend of one of its employees. The houses and lots owned by Marwin Builders, Incorporated, were listed with two local realtors. Marwin Builders, Incorporated, was in the construction business only during the years 1947 through 1951. During 1949 and 1950, petitioner sold six lots to S & M Builders, Incorporated. Petitioners had no financial interest in that corporation. In later years, Saul, the individual who owned S & M Builders, purchased additional lots from petitioners. Petitioner purchased no other real estate, nor made any effort to do so. He sold no land other than the lots referred to above. He was never licensed to deal in real estate. No signs were ever erected on the land in question nor was there any direct advertising. Petitioners reported the profit from the sales of lots during 1949 and 1950, as longterm capital gains of $2,240 and $2,226.36, respectively. During 1949 and 1950, petitioner was in the trade or business of selling *112 real estate. During that period, the lots sold were held primarily for sale to customers in the ordinary course of that business. Opinion The issue is whether the lots petitioner sold were capital assets. If they were held for sale to customers in the ordinary course of petitioner's business, as respondent contends, profit from sales of those lots is excluded from capital gain treatment by section 117(a)(1), Internal Revenue Code of 1939, and is taxable as ordinary income. From the abundant litigation on this point, certain criteria have come to be recognized as standards to assist in evaluating the facts determinative of this question. Boomhower v. United States, (N.D., Iowa) 74 Fed. Supp. 997, for example, lists the significant tests, in substance, as: frequency, continuity, and regularity of sales and sales-related activities; purpose and nature of the acquisition; and activity or time and labor expended to effect the sales, either by means of land improvement and development or by means of advertising and promotional activity or both. Throughout there extends the principle that such activity need not be the taxpayer's sole business. Friend v. Commissioner, (C.A. 10) 198 Fed. (2d) 285. *113 Petitioner contends that his real estate dealings were not large enough to be a business. But a business can be small as well as large. In that event the criteria employed, while identical in kind, can be relatively different. The time required to develop and sell a smaller number of lots may well be less imposing; the number of sales out of a small tract necessarily fewer than those from a large. But if each is appropriate to activity of that size, we see no reason why a business is not being carried on in conformity with the recognized tests. Here, the tract involved was less than 20 acres, and the total number of lots available for sale was 63. Of these 24, or almost two-fifths, were sold in 2 years, or at the rate of one lot every month. The aggregate sales price, while small in itself, was some 6 times petitioner's apparent total investment. Although only $1,000 or so was spent in development activity, this was about a half of petitioner's total original cost outlay. And the net gain for each year in controversy exceeded that sum. Petitioner arranged for the platting, subdividing, and use restrictions on the tract. He was instrumental in having streets cut through and saw *114 to it that a buyer was available from time to time. Employing each one of the criteria listed, we conclude that considering the size of the enterprise it is evident that a business, albeit a small one, was being conducted. Except for Fahs v. Crwford, (C.A. 5) 161 Fed. (2d) 315, which is readily distinguishable, all similar cases have reached a similar result. In Fahs v. Crawford, supra, the activity engaged in was not directly related to sales, but rather to the purpose of establishing the eligibility of the property for F.H.A. financing. The present issue is one of fact after the application of appropriate legal standards. Considering all the circumstances, we think the property was held for sale to customers in the ordinary course of petitioner's business and have so found. Decision will be entered for the respondent.